UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
FRATELLI BVBA,                                                    :
                                  Plaintiff,                      :
                                                                  :
                    -v-                                           :           20 Civ. 6208 (JPC)
                                                                  :
APM MUSIC SERVICES, LLC, MARUICE KEIZER,                          :           OPINION AND ORDER
GLENN STONE, DOES 1 THROUGH 10, and ALL                          :
PARTS MOVE, LLC,                                                 :
                                  Defendants.                     :
                                                                  :
------------------------------------------------------------------X
                                                                  :
GLENN STONE,                                                      :
                                  Cross Claimant,                 :
                                                                  :
                    -v-                                           :
                                                                  :
                                                                  :
MAURICE KEIZER,                                                   :
                                  Cross Defendant.                :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Plaintiff Fratelli BVBA ("Fratelli"), a Belgian music distribution company, contracted with

a Florida business, Defendant APM Music Services, LLC ("APM Music"), to collect and

administer Fratelli's music royalties in the United States.  Fratelli alleges that APM Music and its

two co-owners, Defendants Maurice Keizer and Glenn Stone, misappropriated over $150,000 of

these royalties.  Instead of paying Fratelli, Keizer and Stone allegedly pocketed the royalties by

diverting the money to a sister company, Defendant All Parts Move ("All Parts").  Stone has filed

crossclaims against Keizer, blaming Keizer for diverting the funds and claiming that he, too, is

owed money.

Two motions to dismiss have been filed.  APM Music, All Parts, and Keizer move to dismiss most of Fratelli's claims, and Keizer seeks dismissal of Stone's crossclaims.  For reasons stated below, both motions are granted in part and denied in part.  The Court also *sua sponte* dismisses Fratelli's unjust enrichment claim against Stone.  Three claims survive dismissal: Fratelli's breach of contract claim against APM Music, Fratelli's fraud claim against Keizer, and Stone's breach of fiduciary duty crossclaim against Keizer.

## I.  Background

### A.  Allegations in Fratelli's Amended Complaint

The following facts are taken from Fratelli's Amended Complaint, *see* Dkt. 17 ("Fratelli Am. Compl."), and are presumed true for the purpose of deciding the motion to dismiss Fratelli's claims that was filed by APM Music, All Parts, and Keizer.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

Fratelli is a Belgian music company that assists recording and performing artists in exploiting their musical works.  Fratelli Am. Compl. ¶ 13.  Scala, a women's independent rock choir, hired Fratelli to distribute its recordings and collect any resulting payments on its behalf. *Id.*  In 2010, Fratelli granted non-party Warner Music Group exclusive worldwide rights to distribute Scala's music.  *Id.* ¶ 14.  Also in 2010, Fratelli contracted with All Parts, a Florida LLC, to act as its American intermediary and facilitate the transfer of royalties collected by Warner Music to Fratelli.  *Id.* ¶¶ 4, 15.  Keizer is the sole owner and manager of All Parts.  *Id.* ¶ 5.

In 2016, All Parts and Keizer ran into financial troubles.  *Id.* ¶ 16.  To keep money away from creditors, Keizer convinced Fratelli to switch the contract to another Florida LLC, APM Music, which Keizer managed jointly with Stone.  *Id.* ¶¶ 5-6, 16-17.  The Fratelli-All Parts contract was thus terminated, and a new Fratelli-APM Music contract, titled a "Master Recording

2

Administration Agreement," was signed on February 8, 2016.  *Id.* ¶¶ 18-19, Exh. A ("Recording Agreement").

The Recording Agreement's key terms were: (1) APM Music was to collect certain royalties owed to Fratelli; (2) APM Music was entitled to deduct from the collected royalties a 33.33% commission, plus allowed expenses, with the remaining balance to be remitted to Fratelli; (3) APM Music was required to maintain a single bank account for Fratelli's royalties and give Fratelli online access to review the account's activity; (4) APM Music was required to provide an accounting to Fratelli at certain times; and (5) New York law governs the contract, with exclusive venue in state or federal court in New York.  Recording Agreement ¶¶ 2-3, 7, 12.

Fratelli's Amended Complaint alleges that APM Music twice received money from Warner Music, totaling over $229,000.  Fratelli Am. Compl. ¶¶ 23-29.  Per the contract, APM Music should have deducted its 33.33% commission, plus allowed expenses, and paid Fratelli the remainder, which would have come to over $150,000.  *See id.* ¶¶ 24, 27; Recording Agreement ¶ 3.  But APM Music paid Fratelli nothing.  Fratelli Am. Compl. ¶¶ 25, 28, 30.  Instead, APM Music retained the money "for its benefit and enjoyment and/or for the benefit and enjoyment of Keizer and Stone."  *Id.* ¶¶ 25, 28.  Fratelli further alleges that some or all of this money was diverted to pay for expenses incurred by All Parts or was diverted to Keizer.  *Id.* ¶ 35.  In addition, APM Music failed to provide Fratelli with the required accounting and did not maintain a single bank account set aside for payments received on Fratelli's behalf, as required by the contract.  *Id.* ¶¶ 25, 28, 32; *see* Recording Agreement ¶ 7.  Instead, as alleged, APM Music conducted all its business through All Parts's bank accounts.  Fratelli Am. Compl. ¶ 9.

Fratelli's Amended Complaint asserts three claims: (1) a breach of contract claim against APM Music, (2) a fraud claim against APM Music and Keizer, and (3) an unjust enrichment claim

against APM Music, All Parts, Keizer, and Stone.  *Id.* ¶¶ 40-41, 54, 63.  On December 4, 2020, APM Music, All Parts, and Keizer moved to dismiss all claims but the breach of contract claim against APM Music.  Dkt. 34.

## B.  Allegations in Stone's Amended Crossclaims

Stone has not moved to dismiss, instead electing to answer Fratelli's claims and to file his own crossclaims against Keizer.[1]  The following facts are taken from Stone's Amended Crossclaims, *see* Dkt. 47 at 11-19 ("Stone Am. Crossclaims"), and are presumed true for the purpose of Keizer's motion to dismiss those claims.  *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 741, 747 (S.D.N.Y. 2011).

In 2016, Stone and Keizer entered into an oral agreement to form APM Music for the purpose of handling the Scala account.  Stone Am. Crossclaims ¶ 8.  Stone and Keizer agreed to equally split APM Music's 33.33% commission.  *Id.* ¶ 9.  They also agreed that Keizer would oversee APM Music's bank account and be responsible for the distribution and accounting of payments received on Fratelli's behalf.  *Id.* ¶ 10.  Accordingly, Stone alleges that he has never "exercised any control over, or executed any transactions by or through, APM's bank account." *Id*.

Stone asserts that Keizer twice diverted to himself money APM Music received on Fratelli's behalf, without paying Stone his share of APM Music's commission.  *Id.* ¶¶ 12-13.  Stone alleges that instead, Keizer took this money for his own personal use, either directly or through

---

[1] Stone is proceeding *pro se*.  Stone has acknowledged that he was licensed to practice law in New York in 1985 and that he maintains an active bar membership, although he claims not to have practiced law since around 1990.  Dkt. 67.  Though courts must construe *pro se* pleadings liberally, that rule does not apply when the *pro se* litigant is a licensed attorney.  *See Abbas v. Orrick, Herrington & Sutcliffe, LLP*, No. 15 Civ. 1545 (RJS), 2016 WL 1071033, at *3 (S.D.N.Y. Mar. 16, 2016), *aff'd sub nom. Abbas v. Martin*, 689 F. App'x 43 (2d Cir. 2017).

companies Keizer controlled.  *Id.*  Stone brings five crossclaims against Keizer.  *Id.* ¶¶ 14-34.  Four of these crossclaims—breach of contract, breach of fiduciary duty, conversion, and civil theft— relate to Keizer's alleged failure to pay Stone his share of the royalties.  *Id.* ¶¶ 14-25, 29-34.  The last crossclaim—indemnity—seeks recompense from Keizer for any liability that Stone may face to Fratelli.  *Id.* ¶¶ 26-28.

## C.  Procedural Background

Fratelli filed its initial Complaint on August 7, 2020.  Dkt. 1.  After APM Music and Keizer filed a pre-motion letter expressing their intention to move to dismiss Fratelli's Complaint, Dkt. 16, Fratelli filed his Amended Complaint on October 6, 2020.  Fratelli's Amended Complaint additionally names All Parts as a Defendant, and primarily adds allegations that relate to All Parts.  *See* Fratelli Am. Compl. ¶¶ 4, 9-10, 15-17, 35, 60.  The Amended Complaint otherwise alleges the same causes of action against APM Music, Keizer, and Stone, with some additional allegations in connection with its fraud claim.  *See id.* ¶¶ 44-58.

APM Music, All Parts, and Keizer filed their motion to dismiss on December 4, 2020.  Dkts. 33, 34 ("Motion to Dismiss Fratelli Am. Compl.").  APM Music, All Parts, and Keizer move to dismiss the fraud and unjust enrichment claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and All Parts additionally seeks dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Fratelli filed its opposition on December 18, 2020, Dkt. 36 ("Fratelli Opposition"), and APM Music, All Parts, and Keizer filed their reply on December 30, 2020, Dkt. 42 ("Reply").  APM does not seek dismissal of Fratelli's breach of contract claim.

Meanwhile, Stone filed his initial answer to Fratelli's Amended Complaint and his initial crossclaims against Keizer on December 22, 2020.  Dkt. 39.  Keizer then notified the Court of his intention to move to dismiss Stone's crossclaims on February 12, 2021.  Dkt. 45.  Before Keizer

filed his motion, Stone filed his Amended Crossclaims on March 4, 2021, which also included his answer to Fratelli's Amended Complaint, Dkt. 47 at 1-11 ("Stone Answer").  Keizer filed a motion to dismiss Stone's Amended Crossclaims on April 16, 2021.  Dkts. 50, 50-1 ("Motion to Dismiss Stone Crossclaims").  Stone opposed this motion on May 17, 2021, Dkt. 57 ("Stone Opposition"), and Keizer filed a reply on May 28, 2021, Dkt. 61.

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor," but is "not bound to accept as true legal conclusions couched as factual allegations."  *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009) (internal quotation marks and citation omitted).  While a court must generally limit its review to the facts stated in a complaint, it may also "consider . . . documents attached to the complaint as exhibits," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), which in this case is the Recording Agreement.

## III.   Discussion

The Court grants in part and denies in part both motions.  As to the motion to dismiss Fratelli's claims: (1) Fratelli's fraud claim against APM Music is dismissed, but the fraud claim against Keizer survives; (2) the unjust enrichment claims against all Defendants—including Stone, who has not moved for dismissal—are dismissed; (3) the Court need not resolve All Parts's challenge to personal jurisdiction, as dismissal of the sole claim asserted against All Parts (unjust enrichment) terminates it as a party in this action; and (4) similarly, the Court does not reach the

parties' attacks on Fratelli's veil-piercing allegations because none of the remaining claims proceed on such a theory.   With regard to Keizer's motion to dismiss Stone's Amended Crossclaims: (1) Stone's breach of contract crossclaim against Keizer is dismissed; (2) Stone's breach of fiduciary duty crossclaim against Keizer survives; (3) Stone's conversion and civil theft crossclaims against Keizer are dismissed; (4) Keizer may recover reasonable attorneys' fees from Stone for the failed civil theft claim; and (5) Stone's indemnity claim against Keizer is dismissed. Lastly, the Court denies both Fratelli and Stone leave to further amend their complaints.

## A.  Motion to Dismiss Fratelli's Fraud and Unjust Enrichment Claims

### 1.  Fratelli's Fraud Claim Against APM and Keizer

In its second cause of action, Fratelli asserts fraud claims against APM Music and Keizer under two theories: (1) APM Music and Keizer falsely promised Fratelli that APM Music would perform its obligations under the Recording Agreement, Fratelli Am. Compl. ¶¶ 45-49, and (2) Keizer—in an effort to "prevent Fratelli from uncovering" the fraud—falsely promised in 2017 that he would wire the owed payments to Fratelli, *id.* ¶¶ 50-52.  APM Music and Keizer argue that these claims must be dismissed because New York law does not allow for a fraud claim to be based on a party's misrepresentations regarding intent to perform under a contract.  Motion to Dismiss Fratelli Am. Compl. at 11-13.

Pursuant to the Recording Agreement, Fratelli's fraud claim is governed by New York law. *See* Recording Agreement ¶ 12.  "To prove fraud under New York law, 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale*

*D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).  In addition, New York law prohibits a plaintiff from bringing a fraud claim based on factual allegations which, in essence, sound in breach of contract.  Thus, "intentionally-false statements by [a party to a contract] indicating [the party's] intent to perform under the contract . . . [are] not sufficient to support a claim of fraud." *Id.*  For a fraud claim to survive alongside a breach of contract count, a plaintiff must instead show (1) "a legal duty separate from the duty to perform under the contract," (2) "a fraudulent misrepresentation collateral or extraneous to the contract," or (3) that "special damages . . . are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20 (internal citations omitted).

### a.  Fratelli's Fraud Claim Against APM Music is Dismissed

Fratelli's fraud claim against APM Music rests on the same theory as its breach of contract claim: APM Music promised to pay royalties to Fratelli, as set forth in the Recording Agreement, but did not keep its word.  That describes a breach of contract, not fraud.  It is true that, as Fratelli argues, "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007).  But Fratelli's Amended Complaint alleges no "misrepresentation of a present fact" made during the runup to the Recording Agreement.  Fratelli alleges instead that Keizer and APM Music falsely promised that APM Music would abide by the contract.  *See* Fratelli Am. Compl. ¶ 45 ("APM and Keizer represented to Fratelli that APM would perform all of the services set forth in the [Recording Agreement]. However, neither APM nor Keizer had any intention of performing any such services . . . .").  That is not enough for a separate cause of action for fraud.

8

Fratelli argues that the "additional representations" made by Keizer and APM Music in 2017 "that they would make the delinquent payments to Fratelli" are collateral to the contract and separate from the breach of contract claim.  Fratelli Opposition at 16.  These 2017 statements too were nothing more than promises to perform APM Music's contractual obligations.  *See Bridgestone/Firestone, Inc.*, 98 F.3d at 19.  And numerous courts have found that a defendant's "further statements about [the defendant]'s ability or intention to pay [the price due under a contract], whether false are not, are not cognizable under *Bridgestone/Firestone*" because they are merely "false assurances of . . . intent to perform [under the contract]." *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 506-07 (S.D.N.Y. 2017); *see, e.g.*, *Mohegan Lake Motors, Inc. v. Maoli*, No. 16 Civ. 6717 (NSR), 2017 WL 6335905, at *7 (S.D.N.Y. Dec. 7, 2017).

Finally, the Court rejects Fratelli's attempt to salvage its fraud claim against APM Music by relying on the third *Bridgestone/Firestone* exception.  Fratelli argues that it "seek[s] special damages . . . caused by the misrepresentation [that are] unrecoverable as contract damages," *Bridgestone/Firestone, Inc.*, 98 F.3d at 20, specifically, punitive damages.  Fratelli Opposition at 17.  While Fratelli does include punitive damages in its Prayer for Relief, Fratelli Am. Compl. at 11, "[a] general request for punitive damages is not enough to differentiate the damages recoverable for fraud from those sought for breach of contract," *Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, No. 13 Civ. 5193 (SAS), 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014) (quoting *Sekisui Am. Corp. v. Hart*, No. 12 Civ. 3479 (SAS), 2012 WL 5039682, at *3 (S.D.N.Y. Oct. 17, 2012)); *see BMS Cat, Inc. v. Klemmt Orthotics & Prosthetics, Inc.*, No. 13 Civ. 315 (KBF), 2014 WL 12675265, at *5 (N.D.N.Y. Jan. 28, 2014) (collecting cases).  Accordingly, the fraud claim against APM Music is dismissed as duplicative of the breach of contract claim.

9

### b. Fratelli's Fraud Claim Against Keizer Survives

The fraud claim against Keizer, however, survives.[2]  "[A] fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." *Sun Prods. Corp. v. Bruch*, 507 F. App'x 46, 48 (2d Cir. 2013) (quoting *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 589 (App. Div. 2003)); *see also LIUS Grp. Int'l Endwell, LLC v. HFS Int'l, Inc.*, 939 N.Y.S.2d 525, 527 (App. Div. 2012).  Since Keizer was not a party to the Recording Agreement, the fraud claim against him is not duplicative of the breach of contract claim, which is asserted only against APM Music.  Fratelli's Amended Complaint adequately alleges that Keizer made knowingly false statements to Fratelli about his intent to perform services, that Keizer falsely promised Fratelli in 2017 that he had wired or was about to wire money to Fratelli, and that Keizer instead diverted the money to himself.  *See* Fratelli Am. Compl. ¶¶ 45-52.[3]  The ultimate damages on the fraud claim against Keizer (if any) may turn out to be duplicative

---

[2] Fratelli and Keizer appear to agree that New York law applies to all of Fratelli's claims. *See* Motion to Dismiss Fratelli Am. Compl. at 11-13; Fratelli Opposition at 14-17.  Pursuant to New York choice-of-law rules, New York law applies when "[t]he parties' briefs assume that New York law controls." *Response Pers., Inc. v. Hartford Fire Ins. Co.*, 812 F. Supp. 2d 309, 314 (S.D.N.Y. 2011); *accord Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (alteration in original) (quoting *Tehran-Berkeley Civil & Env't Eng'rs v. Tippets-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))).  The Court therefore applies New York law to Fratelli's claims against Keizer.

[3] A subheading in the moving brief states that "[t]he fraud claim must be dismissed because it is not pled with particularity."  Motion to Dismiss Fratelli Am. Compl. at 11.  "Claims of fraud are subject to a heightened pleading standard under Fed, R. Civ. P. 9(b)" and "must state with particularity the circumstances constituting fraud or mistake." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019).  "While [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Id.* (alteration in original) (internal quotation marks and citation omitted).  The moving brief, however, does not present any arguments as to why Fratelli's fraud claim does not meet Rule 9(b)'s pleading standard.  Fratelli's Amended Complaint alleges multiple specific, knowingly false statements made by Keizer with the intent to deceive Fratelli, with the ultimate goal of diverting money owed to Fratelli to his own benefit. *See, e.g.*, Fratelli Am. Compl. ¶¶ 47-49.  The Court therefore finds that Fratelli adequately pleaded its fraud

of the damages awarded on the breach of contract claim against APM Music (if any).  *See* Fratelli

Opposition at 17 (conceding that "Fratelli's breach of contract claim against APM [Music] would

bar recovery of the same damages on both claims").  But at this juncture, this fraud claim survives.

### 2. Fratelli's Unjust Enrichment Claims Against All Defendants Are Dismissed

Fratelli asserts claims for unjust enrichment against all four Defendants—APM Music, All

Parts, Keizer, and Stone.  Fratelli alleges that the Defendants' "continued retention of the money

paid by [Warner Music] for Fratelli constitutes unjust enrichment," and that "[i]n justice and

equity, such money belongs to Fratelli, because Defendants failed to provide Fratelli with the

services set forth in the [Recording Agreement]."  Fratelli Am. Compl. ¶¶ 61, 63.

All Defendants but Stone move to dismiss this claim against them.  That motion is granted

because "New York law does not permit recovery in quantum meruit . . . if the parties have a valid,

enforceable contract that governs the same subject matter as the quantum meruit claim."  *Mid-*

*Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

And unlike the fraud claims, which are duplicative only as to the signatory to the contract, this rule

bars unjust enrichment claims even against non-signatories to the contract.  *See Mueller v. Michael*

*Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207-08 (S.D.N.Y. 2016) (collecting cases); *Vista*

*Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 312 (S.D.N.Y. 2015)

(holding that claims for unjust enrichment "cannot go forward if there is a valid contract governing

the subject matter of the dispute, even if one of the parties to the claim is not a party to that

contract" (citations omitted)).  Fratelli cites several decisions holding that a plaintiff may plead an

unjust enrichment claim as an alternative to a breach of contract claim.  But each of Fratelli's cited

authorities clarifies that this rule applies *where the validity of the contract is in dispute*.  *See* Fratelli

---

claim against Keizer.

Opposition at 12-13.  Because all parties agree that the Recording Agreement is a valid contract that governs the dispute at hand, *see* Fratelli Am. Compl. ¶¶ 19-22; Reply at 5; Stone Answer at ¶ 19, Fratelli's unjust enrichment claims against APM Music, All Parts, and Keizer must be dismissed.

Moreover, although Stone does not move to dismiss the unjust enrichment claim against him, the Court dismisses that claim *sua sponte*.  "[A] district court has the power to dismiss a complaint *sua sponte* for failure to state a claim upon which relief can be granted . . . only where a plaintiff has been given 'an opportunity to be heard.'"  *Palkovic v. Johnson*, 150 F. App'x 35, 37 (2d Cir. 2005) (internal citation omitted) (quoting *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988)).  The unjust enrichment claims against all four Defendants are virtually identical, in that they are all based on allegations that Fratelli's royalties were diverted to Defendants.  APM Music, All Parts, and Keizer challenged the viability of this claim, and Fratelli responded to their arguments in detail.  *See* Motion to Dismiss Fratelli Am. Compl. at 9-11; Fratelli Opposition at 11-14.  And since the unjust enrichment claims against APM Music, All Parts, and Keizer are dismissed, so is the unjust enrichment claim against Stone.  *See Beck v. City of New York*, No. 12 Civ. 9231 (RA), 2014 WL 80544, at *1 n.2 (S.D.N.Y. Jan. 3, 2014) ("Because the Court's rulings in this Order would apply equally to [a nonmoving defendant], the Court dismisses the claims against him *sua sponte*.").[4]

---

[4] Because dismissal of the unjust enrichment claims terminates All Parts from this action, the Court does not address its argument for dismissal for lack of personal jurisdiction.  The Second Circuit has explained that while personal jurisdiction should "traditionally" be treated "as a threshold question to be addressed prior to consideration of the merits of a claim . . . that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues. In cases involving multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, we have proceeded directly to the merits on a motion to dismiss."  *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (internal quotation marks

### 3.  The Court Does Not Reach the Sufficiency of Fratelli's Veil-Piercing Allegations

In the body of its Amended Complaint, Fratelli makes veil-piercing allegations as to both APM Music and All Parts, alleging them to be the alter ego of Keizer and/or Stone.  Fratelli Am. Compl. ¶¶ 9-10.[5]  Fratelli alleges that APM Music "is centrally controlled and dominated by Keizer and Stone," lacks "adequate distinctions" from those individuals, and "is the alter ego of Keizer and Stone," such that "the legal separateness of APM [Music] from the other Defendants should be disregarded."  *Id.* ¶ 9; *see id.* (alleging that APM Music's principal place of business is a UPS Store in Miami, "the assets of the various Defendants have been commingled," "sums paid to APM [Music] in trust for Fratelli were diverted by Keizer and/or Stone for their own use and benefit," and APM Music "never maintained a bank account, but instead used [All Parts's] bank accounts for all of APM [Music's] business").  Fratelli makes similar allegations as to All Parts's relationship with Keizer, asserting that "[All Parts] is the alter ego of Keizer."  *Id.* ¶ 10.

The Court need not resolve the parties' dispute as to whether Fratelli's veil-piercing allegations are adequately pleaded.  Motion to Dismiss Fratelli Am. Compl. at 13-17; Fratelli

---

and citations omitted); *see also RSM Prod. Corp. v. Fridman*, 387 F. App'x 72, 75 n.3 (2d Cir. 2010) (quoting a treatise stating that "when the jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided in favor of the party challenging jurisdiction, thereby obviating any need to decide the question").

[5] Because APM Music and All Parts are Florida LLCs, Florida law governs them.  *See Allison v. Clos-ette Too, LLC*, No. 14 Civ. 1618 (LAK) (JCF), 2014 WL 4996358, at *6 (S.D.N.Y. Sept. 15, 2014), *report and recommendation adopted*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014).  The doctrine of alter ego and veil piercing is a narrow exception to the "general principle of corporate law . . . that a corporation is a separate legal entity, distinct from the persons comprising them."  *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008); *see also Segal v. Forastero, Inc.*, No. 3D21-89, 2021 WL 2212869, *2 (Fla. Dist. Ct. App. 2021) (describing veil piercing in the context of Florida LLCs).  The doctrine "is not a separate cause of action for which relief can be granted," but instead "serves as a theory to impose liability on an individual for the acts of a corporate entity."  *Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14 Civ. 20136 (BB), 2014 WL 5795187, at *9 (S.D. Fla. Oct. 2, 2014) (citation omitted).

Opposition at 17-19.  Based on the Court's above holdings, the only remaining claims in Fratelli's Amended Complaint are the breach of contract claim against APM Music and the fraud claim against Keizer.  Neither rests on a veil-piercing theory.  For instance, Fratelli does not plead breach of contract against Keizer on the basis that he should be held liable for APM Music's breach; rather, Fratelli's breach of contract claim is directed solely at APM Music.  The only surviving fraud claim is the one lodged against Keizer personally, and therefore Fratelli does not need to pierce APM Music's corporate veil to recover damages from Keizer.[6]

## B.  Motion to Dismiss Stone's Crossclaims[7]

Stone asserts five crossclaims against Keizer: (1) breach of contract, (2) breach of fiduciary duty, (3) conversion, (4) indemnity, and (5) violation of the Florida civil theft statute. Fla. Stat. Ann. § 772.11(1).  The parties agree that Florida law applies to Stone's crossclaims.  *See* Motion to Dismiss Stone Crossclaims at 7-22; Stone Opposition at 7-16.  Keizer moves to dismiss all these counts.  The Court grants the motion as to four of the counts but finds that Stone's breach of fiduciary duty claim survives.

---

[6] Fratelli neither pleads nor argues a reverse veil-piercing theory to hold APM Music liable for any judgment entered against Keizer.  *See SE Prop. Holdings, LLC v. Phillips*, No. 15 Civ. 554 (MCR), 2016 WL 11529614, at *3 (N.D. Fla. May 4, 2016) (explaining the doctrine of piercing the corporate veil "in the reverse," which entails "hold[ing] a corporation responsible for the personal debts of a shareholder or owner who organized or used the corporation to deceive personal creditors").

[7] Although the sole claim against Stone has been dismissed and Stone's crossclaims may not meet the amount-in-controversy requirement of 28 U.S.C. § 1332, the Court exercises its discretion to retain supplemental jurisdiction over Stone's crossclaims against Keizer pursuant to 28 U.S.C. § 1367(a).  Stone's crossclaims are related to Fratelli's surviving claims against APM Music and Keizer, and litigating these claims in one action would serve the interests of judicial economy, convenience, and fairness. *See Liberty Mut. Ins. Co. v. Harvey Gerstman Assocs.*, No. 11 Civ. 4825 (SJF), 2012 WL 5289587, at *4 (E.D.N.Y. Oct. 24, 2012).

### 1.   Stone's Breach of Contract Crossclaim Against Keizer is Dismissed

The Court begins with Stone's crossclaim for breach of contract.  The contract at issue is an alleged oral operating agreement between Stone and Keizer that formed APM Music in 2016. *See* Stone Am. Crossclaims ¶ 8.  According to Stone, the agreement provided that Keizer would manage the Fratelli account and that Stone and Keizer would equally split APM Music's 33.33% commission.  *Id.* at 12 ¶¶ 8-9.  Stone's claim can thus be divided into two theories: (1) Keizer did not fulfill his duties to properly manage the Fratelli account and (2) Keizer failed to pay Stone his share of the commission.  *Id*. ¶ 16 (alleging that "Keizer has not properly accounted for the royalties received by APM [Music]" and "has not paid Stone his 50% share of the royalty revenue received as agreed between the parties").

The Florida Revised Limited Liability Company Act governs the circumstances under which one member of an LLC may sue another.  *See* Fla. Stat. Ann. § 605.0801.  It allows "a member" to "maintain a direct action against another member" to "enforce the member's rights . . . including rights and interests under the operating agreement" when either of two conditions are met.  *Id.*  The plaintiff member must plead and prove either: (1) "[a]n actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company" or (2) "[a]n actual or threatened injury resulting from a violation of a separate statutory or contractual duty owed by the alleged wrongdoer to the member."  *Id.* § 605.0801(2).

The first theory, that Keizer breached his obligation to manage the Fratelli account, fails because Keizer owed the obligation to APM Music, not to Stone.  Stone alleges that APM Music's oral operating agreement required Keizer to "maintain and manage [APM Music's] office and bank account . . . and . . . be responsible for the accounting and distribution of the royalties received from Warner [Group] to [Fratelli]."  Stone Am. Crossclaims ¶ 10.  The alleged harm was therefore

to APM Music generally, not Stone specifically.  And, as indicated above, claims for injuries suffered by an LLC as a whole and in violation of a duty to the LLC must be brought derivatively, not directly.  *See* Fla. Stat. Ann. § 605.0801(2); *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 742 (Fla. Dist. Ct. App. 2014) (holding that, absent a contrary provision in the operating agreement, an LLC member could not sue a co-member based on general harm to the corporation); *Ferk Fam., LP v. Frank*, 240 So. 3d 826, 837-39 (Fla. Dist. Ct. App. 2018) (confirming that *Dinuro* is still good law notwithstanding subsequent statutory amendments).  In other words, Stone cannot sue for breach of contract under his first theory.

The second theory, that Keizer did not pay Stone his share of the Fratelli commissions, fails because APM Music, not Keiser, was obligated to pay Stone.  Stone's share of the commission was to come from APM Music once it "collected and administer[ed]" the royalties "from Warner." Stone Am. Crossclaims ¶ 9.  One of the primary purposes in forming a limited liability company is to ensure that its "debt[s], obligation[s], or other liabilit[ies]" are "solely the . . .  company['s]." Fla. Stat. Ann. § 605.0304(1).  Hence, "[a]bsent . . . a stipulation" "stating that the members shall be directly liable to each other for breaches of the terms of the operating agreement," Florida courts "presume individual members are not liable for obligations or decisions of the company, as limited liability is one of the paramount reasons for forming an LLC." *Demir v. Schollmeier*, 199 So. 3d 442, 446 (Fla. Dist. Ct. App. 2016) (quoting *Dinuro Invs., LLC*, 141 So. 3d at 742).  Because Stone has not alleged that the oral operating agreement modified this default rule, Stone's breach of contract crossclaim is dismissed.

## 2. Stone's Breach of Fiduciary Duty Crossclaim Against Keizer Survives

Stone next alleges that Keizer breached his fiduciary duty by mismanaging the Fratelli account and misappropriating the money due to Stone.  As with the breach of contract claim,

Keizer argues that this claim must be brought derivatively on behalf of APM Music.  Motion to Dismiss Stone Crossclaims at 9-11.  But unlike the contract claim, based on Stone's allegations, Stone is the proper plaintiff for this claim, and Keizer is the proper defendant.

Three Florida statues are particularly relevant.  The first provides that each member of an LLC "owes fiduciary duties of loyalty and care" *both* to the LLC *and* to individual members.  Fla. Stat. Ann. § 605.04091(1).  This includes an obligation on members to "discharge their duties and obligations . . . under the operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing."  *Id.* § 605.04091(4).

The second statute provides that LLC members are "not personally liable for monetary damages to [other LLC members]" for "management or policy decisions" unless certain conditions are met.  *Id.* § 605.04093(1).  Liability may be imposed if the member failed to perform his duties in "[a] transaction from which the manager or member derived an improper personal benefit, directly or indirectly."  *Id.* § 605.04093(1)(b)(2).

The third statute, as previously discussed, allows an LLC member to bring a direct suit (as compared to a derivative suit brought on behalf of the corporation) only if the member suffered either:

> (a) An actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company; or
>
> (b) An actual or threatened injury resulting from a violation of a separate statutory or contractual duty owed by the alleged wrongdoer to the member, even if the injury is in whole or in part the same as the injury suffered or threatened to be suffered by the limited liability company.

*Id.* § 605.0801(2).

Per the first statute, Keizer, as a member of the LLC (*i.e.*, APM Music), owed fiduciary duties to his fellow LLC member, Stone.  Per the second statute, Keizer's alleged diversion of the Fratelli royalties for his own personal benefit could be actionable.  And per the third statute, Stone's alleged injury satisfies both of the alternative circumstances that allow for direct suits.  First, Stone adequately alleges that he suffered "[a]n actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company."  *Id.* § 605.0801(a).  Namely, Stone suffered a unique injury when Keizer allegedly diverted over $25,000 that should have gone to Stone.  Stone Am. Crossclaims ¶ 21; *cf. Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC*, 349 F. Supp. 3d 1316, 1326-27 (S.D. Fla. 2018) (holding that a breach of fiduciary duty claim must be brought derivatively where the alleged diversion harmed the LLC members "in amounts equal to their rightful ownership" of the LLC).  And second, Stone adequately alleges that he suffered "[a]n actual or threatened injury resulting from a violation of a separate statutory or contractual duty owed by the alleged wrongdoer to the member."  Fla. Stat. Ann§ 605.0801(b).  That is, Stone's injury allegedly resulted from Keizer's breach of statutory fiduciary duties Keizer owed specifically to Stone as a member of the LLC.  Stone is thus the proper plaintiff for the breach of fiduciary duty claim.

Keizer is also the proper defendant.  Stone's breach of contract claim failed because Keizer's contractual obligations were owed only to APM Music, not to Stone.  But here, Stone has plausibly alleged that Keizer owed fiduciary duties specifically to Stone.  *See id.* § 605.04091(1).  And since Stone plausibly alleges that Keizer breached those duties by diverting Stone's share of the Fratelli royalties to himself, this crossclaim survives dismissal.  *See Fodor v. Crossview, Inc.*, No. 14 Civ. 81024 (JIC), 2015 WL 11256564, at *2 (S.D. Fla. May 14, 2015) (allowing direct

breach of fiduciary duty claim by one LLC member against another for failure to pay income distributions that were specifically due to the plaintiff, rather than to the shareholders as a whole).

### 3. Stone's Conversion Crossclaim is Dismissed

Stone's next crossclaim against Keizer is for conversion. "[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman)*, 450 So. 2d 1157, 1160-61 (Fla. Dist. Ct. App. 1984). To allege a conversion claim under Florida law, a plaintiff must plead three elements: "(1) an act of dominion wrongfully asserted; (2) over another's property; [that is] (3) inconsistent with his ownership therein." *Aileron Inv. Mgmt., LLC v. Live Oak Banking Co.*, No. 21 Civ. 108 (VMC), 2021 WL 1238401, at *2 (M.D. Fla. Apr. 2, 2021) (citation omitted); *see also Warshall v. Price*, 629 So. 2d 903, 904 (Fla. Dist. Ct. App. 1993).

Florida courts have also adopted a fourth requirement for a conversion claim involving money: "the plaintiff must show that 'specific and identifiable money is involved in the alleged offense.'" *Aileron Inv. Mgmt., LLC*, 2021 WL 1238401, at *2 (quoting *Lahtinen v. Liberty Int'l Fin. Servs., Inc.*, No. 13 Civ. 61766 (RSR), 2014 WL 315199, at *5 (S.D. Fla. Jan. 31, 2014)); *see also Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. Dist. Ct. App. 1983). And while "[t]o be a proper subject of conversion each coin or bill need not be earmarked . . . there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970); *see also id.* ("Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained."). The purpose behind this requirement is to "ensure[] that a fund of money *actually exists to pay a specific debt owed* and the claimant is

not merely transforming a contract dispute into a conversion claim." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009); *see also Gambolati v. Sarkisian*, 622 So. 2d 47, 50 (Fla. Dist. Ct. App. 1993) ("A debt which may be discharged by the payment of money in general cannot form the basis for conversion."). Keizer argues that Stone's claim must be dismissed because the funds at issue are not specific and identifiable. Motion to Dismiss Stone Crossclaims at 13-14. The Court agrees.

"Florida courts have held money to be a proper subject of conversion where a sum of money sealed in an addressed envelope was misdelivered, . . . and where a specified sum of money in a deposit bag was never credited to the depositor's account . . . ." *Belford Trucking*, 243 So. 2d at 648 (citations omitted). The same goes if someone withdraws money from a specific bank account belonging to a specific person. *See Allen*, 429 So. 2d at 371. But a conversion claim cannot be stated "where the parties have an open account, and the defendant is not required to pay the plaintiff identical moneys which he collected." *Belford Trucking*, 243 So. 2d at 648. Thus, if two people co-own a racehorse and the racetrack deposits the horse's winnings in a joint account, one co-owner's withdrawal of that money is not conversion. *See Gambolati*, 622 So. 2d at 50.

*Gambolati* is particularly instructive here. In *Gambolati*, the parties co-owned two racehorses and agreed to share any winnings. *Id.* at 48. The winnings were deposited in a joint account. *Id.* The defendant withdrew the purse money in connection with two specific winnings and the plaintiff sued, alleging that he did not receive his portion of these profits. *Id.* at 49. The Florida state appellate court explained that while a portion of the deposits "was owed to [the plaintiff], the winnings were joint funds." *Id.* at 50. The court therefore concluded that because the money owed was not "delivered all at one time nor segregated," it was "not clearly identifiable"

and the plaintiff's conversion claim was seeking to improperly "enforce an obligation to pay money and nothing more." *Id.*

Stone's conversion claim seeking his share of the royalties is similarly an attempt to enforce a contractual obligation. None of the delinquent payments at issue are identifiable. Like the horse's winnings, Scala's royalties were deposited into APM Music's account in lump sums. Like the horse's owners, Keizer and Stone were to split their share after allowed expenses: one-sixth to Keizer and one-sixth to Stone (with the other two-thirds to Fratelli). But none of the funds that Keizer allegedly diverted were specifically earmarked for Stone as required under Florida law for a conversion claim involving money. *See Kee v. Nat'l Rsrv. Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2008); *Rupp v. Schon*, 608 So. 2d 934, 935 (Fla. Dist. Ct. App. 1992) ("[A]n action for conversion of money can only be maintained where the money at issue has been kept separate."); *Fla. Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059, 1061 (Fla. Dist. Ct. App. 2002). As in *Gambolati*, Stone's conversion claim fails as a matter of law and therefore is dismissed.[8]

### 4. Stone's Civil Theft Crossclaim Against Keizer is Dismissed, and Keizer May Recover Reasonable Attorneys' Fees from Stone

Stone also alleges a civil theft claim against Keizer pursuant to section 772.11 of the Florida Statutes. Stone Am. Crossclaims ¶¶ 29-34. Section 772.11 provides that a person who has been injured by violations of certain criminal statutes may recover civil damages. Fla. Stat. Ann.

---

[8] Further undermining Stone's conversion claim is the fact that the royalty money was held by an LLC. Under Florida law, "[a]ll property . . . acquired by a limited liability company by purchase or other method is limited liability company property" and "[a] member of a limited liability company has no interest in any specific limited liability company property." Fla. Stat. Ann. § 605.0110(1), (4). Since the Fratelli royalties were paid to APM Music, the money in the account belonged to the LLC, not to Stone. *See* Stone Answer ¶¶ 11-13 (alleging that "APM received [the] royalties"). So, when Keizer allegedly took the money from the account, he was taking APM Music's money, not Stone's.

§ 772.11(1).   Stone's Amended Cross-Complaint does not specify which underlying criminal statute Keizer violated, but the most applicable would seem to be section 812.014 of the Florida Statutes, which criminalizes theft.  *See* Fla. Stat. Ann. § 812.014(1)(a).

Stone's civil theft claim is dismissed for the same reason that the conversion claim was dismissed.  "To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent."  *Gasparini*, 972 So. 2d at 1056; *see also Fla. Desk, Inc.*, 817 So. 2d at 1061 (reversing judgment against the defendant on a civil theft claim under section 772.11 because the funds at issue "were unsegregated and were placed in a general operating account").  Since there is no conversion claim, there is no civil theft claim.

Keizer also seeks his attorneys' fees, relying on a provision of section 772.11 that entitles a "defendant . . . to recover reasonable attorney's fees and court costs . . . upon a finding that the claimant raised a [civil theft] claim that was without substantial fact[ual] or legal support."  Fla. Stat. Ann. § 772.11(1).  The statute specifies that, in awarding fees, "the court may not consider the ability of the opposing party to pay such fees and costs."  *Id.*  Fees may be awarded even if the claims were not frivolous.  *See Bronson v. Bronson*, 685 So. 2d 994, 995 (Fla. Dist. Ct. App. 1997).

Keizer is entitled to reasonable attorneys' fees because Stone's civil theft claim lacked substantial legal and factual support.  As discussed above, established Florida law instructs that funds deposited in joint accounts may not be the subject of a conversion claim.  The key authority again is *Gambolati*, the horseracing case.  622 So. 2d at 49.  The trial court in *Gambolati* had found for the defendant—the analogue to Keizer here—on the ground that the removal of money from the joint account was neither conversion nor civil theft, but it denied the defendant's motion for fees.  *Id.* at 48.  The appellate court reversed and remanded on the fees issue, instructing the trial court to determine the "attorney's fees expended on the civil theft count."  *Id.* at 50.  The appellate

22

court held that because the plaintiff's claim was without substantial legal support, fees were required under the statute. *Id.* The same result follows here. *See Opus Grp., LLC. v. Int'l Gourmet Corp.*, No. 11 Civ. 23803, 2013 WL 12383485, at *4 (S.D. Fla. July 26, 2013) (awarding fees in failed civil theft claim involving fungible money); *Moore Bus. Forms, Inc. v. Iberoamerican Elecs., S.R.L.*, 698 So. 2d 611, 613 (Fla. Dist. Ct. App. 1997) ("It was plaintiff's failure to allege a claim of civil theft sufficient to withstand defendant's motion to dismiss, that entitled defendant to be awarded its attorney's fees.").

Keizer, however, may recoup only the fees expended on defending against the civil theft claim, not the other four crossclaims. *See Opus Grp.*, 2013 WL 12383485, at *8; *Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 03 Civ. 1170, 2007 WL 191308, at *2 (M.D. Fla. Jan. 23, 2007), *aff'd*, 241 F. App'x 619 (11th Cir. 2007). Stone and Keizer are therefore directed to confer and attempt to reach agreement as to the amount of fees due to Keizer by October 8, 2021. If the parties are unable to reach an agreement, Keizer may file a letter motion of up to five pages (not counting any exhibits) setting forth his fees request by October 22, 2021. Stone may file opposition papers of the same length by November 5, 2021. Keizer may file a two-page letter reply by November 12, 2021.

### 5. Stone's Indemnity Crossclaim Against Keizer is Dismissed

Stone seeks indemnity from Keizer in the event that Stone is held liable for any of Fratelli's claims. Because Fratelli's lone claim against Stone was dismissed, Stone's indemnity crossclaim is dismissed without prejudice as moot.

## C. Leave to Amend is Denied to Both Fratelli and Stone

Fratelli and Stone both ask for leave to amend in the event any of their claims are dismissed. These requests are denied. Both Fratelli and Stone have already amended their pleadings once.

Neither Fratelli nor Stone specify what allegations they wish to add in an amended pleading—with the exception of Fratelli's proposed amendments relating to personal jurisdiction, which the Court need not address.  Fratelli and Stone had ample notice of the arguments to be lodged against them, including via pre-motion letters, and both amended their complaints after receiving those letters but without resolving the identified deficiencies.  Denial of leave to amend is therefore appropriate. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011).

### IV.  Conclusion

For the foregoing reasons, both motions to dismiss are granted in part and denied in part. The Court dismisses with prejudice Fratelli's fraud claim against APM Music and all of Fratelli's unjust enrichment claims.  The Court also dismisses with prejudice Stone's claims for breach of contract, conversion, and violation of Florida's civil theft statute, and dismisses without prejudice his request for indemnity.  Keizer also may recover from Stone his reasonable attorneys' fees for defending against the failed civil theft claim.  Three claims therefore survive: (1) Fratelli's breach of contract claim against APM Music, (2) Fratelli's fraud claim against Keizer, and (3) Stone's breach of fiduciary duty claim against Keizer, over which the Court exercises supplemental jurisdiction.  Because the Court concludes that oral argument in this case is unnecessary, the request by APM Music, All Parts, and Keizer for oral argument is denied.  APM Music and Keizer shall answer the remaining claims against them by October 22, 2021, and Stone and Keizer shall confer on the issue of fees no later than October 8, 2021.

The Clerk of the Court is respectfully directed to terminate the motions pending at Docket Numbers 33, 35, and 50.

SO ORDERED.

Dated: September 27, 2021
      New York, New York

                                            JOHN P. CRONAN
                                   United States District Judge

25